**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JUAN FEDERICO BAUTISTA,**

        **Petitioner,**           Case No. 6:06-cv-740-Orl-22DAB
                                                                  (6:03-cr-10-Orl-22DAB)

**-vs-**

**UNITED STATES OF AMERICA,**

        **Respondent.**

_____

# ORDER

This case involves an amended motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255, filed by Juan Federico Bautista (Doc. 12). Petitioner also filed a supporting memorandum of law (Doc. 13). The Government filed a response (Doc. 16) to the amended section 2255 motion in compliance with this Court's instructions and with *The Rules Governing Section 2255 Cases in the United States District Courts*. Petitioner filed a reply (Doc. 18) to the Government's response.

Petitioner alleges five claims for relief in his amended motion: one claim that he received ineffective assistance of counsel (claim one); one claim that there was a structural error in his sentence (claim two); one claim that the sentence imposed was a violation of his Sixth Amendment right to trial by jury (claim three); one claim that the "remedial rule" announced in *U.S. v. Booker*, 543 U.S. 220 (2005), is unconstitutional (claim four); and one claim that the sentence was unreasonable in light of the sentences received by Petitioner's co-conspirators (claim five).

### I.     *Procedural History*

Petitioner and several other individuals were charged in a one-count indictment with conspiracy to import MDMA, commonly known as "Ecstacy." (Criminal Case No. 6:03-cr-10-Orl-22DAB, Doc. 80, filed July 7, 2004).[1] After a two-day jury trial, Petitioner was found guilty of the charge contained in the indictment. *See* Criminal Case Doc. 131. A sentencing hearing was conducted, and Petitioner was sentenced to a 97-month term of imprisonment (Criminal Case Doc. No. 143). Petitioner filed a notice of appeal, and the Eleventh Circuit issued an unpublished opinion affirming Petitioner's conviction and sentence. *See* Criminal Case Doc. 166.

### II.    *Claim One*

Petitioner maintains that he received ineffective assistance of counsel because his trial counsel: (1) failed to inform Petitioner of a plea offer by the Government; (2) failed to provide Petitioner with an interpreter during pretrial meetings; (3) failed to explain the Sentencing Guidelines as applied to his case; and (4) failed to allow Petitioner to testify at trial.

### A.    *The Legal Standard*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id.* at 687-88. A court must adhere to a strong presumption

---

[1] Criminal Case No. 6:03-cr-10-Orl-22DAB will be referred to as "Criminal Case."

[2] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish

that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.), *cert. denied*, 493 U.S. 945 (1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted), *cert. denied*, 514 U.S. 1131 (1995). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

***B.   Issue One***

---

prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

Petitioner first contends that he received ineffective assistance of counsel because his attorney failed to inform him of a plea bargain offered by the Government. The Government responds that, although Petitioner was given an opportunity to make a proffer as part of preliminary plea negotiations, Petitioner's assertion of "total ignorance" of the conspiracy resulted in the termination of plea negotiations before an agreement could be established (Doc. 16 at 8-9). Therefore, the Government asserts, Petitioner was never offered a plea agreement, and, as such, his counsel could not have been deficient in failing to inform him of such an agreement.

In light of the Government's denial of the existence of a plea offer, and Petitioner's failure to produce evidence to the contrary, the Court cannot say that counsel's performance was deficient in this instance. Certainly, counsel could not be expected to convey a plea deal to Petitioner when the Government had not in fact offered one. Therefore, Petitioner's claim must be denied as to this issue.

### C.   *Issue Two*

Petitioner next claims that his attorney rendered ineffective assistance when he failed to employ a Spanish language interpreter during his pretrial meetings with Petitioner. Petitioner contends that, while his attorney did indeed speak Spanish, "the kind of Spainish [sic] counsel spoke [was] not the same as understood by Petitioner" (Doc. 13 at 3).

The Court notes that Petitioner initially raised this issue at the sentencing hearing. When confronted by Petitioner's allegation at the hearing, counsel explained to the Court that he had asked Petitioner on "several occasions" whether he understood the Spanish counsel was speaking, and Petitioner had "always indicated that he did" (Criminal Case Doc. 162 at 15). Counsel further indicated that he had, on at least one other occasion, hired a professional translator to

-4-

communicate with a Spanish-speaking client "due to issues of accent and pronounciation [sic]," and that he did not generally "have any problem" hiring a professional translator when he felt a translator was necessary (*Id*. at 15-16).

The Court finds that the attorney's performance in this regard was entirely reasonable. It is undisputed that the attorney did not hire a Spanish language interpreter for his pretrial meetings with Petitioner. However, there is no indication from the record that Petitioner ever told his attorney that he could not understand him, nor is there any indication that Petitioner requested a professional translator and his attorney denied his request. Therefore, the Court cannot say that the attorney's failure in this instance to employ an interpreter for his pretrial meetings with Petitioner was unreasonable, especially considering the fact that the attorney had no reason to believe that Petitioner was having any difficulty understanding him.

Moreover, Petitioner has not shown that his defense was prejudiced by the fact that he did not have an interpreter present during pretrial meetings with his attorney. Petitioner mentions in the amended motion that "the language barrier may have been responsible in the failure of counsel to discuss any plea offer" (Doc. 13 at 3); however, as previously discussed, the Government did not offer Petitioner a plea deal in this case. Petitioner's suggestion that his inability to understand his attorney's Spanish resulted in a missed opportunity to take a plea offer is untenable. Because Petitioner has failed to show both deficient performance and prejudice on this issue, Petitioner's claim as to this issue must be denied.

### D.   *Issue Three*

Petitioner further contends that his attorney failed to discuss the Sentencing Guidelines with him, thus rendering his assistance ineffective. Specifically, Petitioner alleges that his

-5-

attorney did not properly inform him of the potential sentence he faced if he went to trial, as opposed to the potential sentence to be imposed if he pled guilty.

On this issue, the Court notes that the guideline range found to be applicable in Petitioner's case dictated a sentence of between 151 months and 188 months. Petitioner was actually sentenced to 97 months, well below the minimum sentence recommended by the guidelines. Therefore, Petitioner cannot show that his attorney's failure to discuss the guidelines with him resulted in any prejudice to him. In fact, as the Eleventh Circuit noted when it rendered its judgment on Petitioner's direct appeal, "Bautista should consider himself fortunate to have received that sentence." *U.S. v. Bautista*, 156 F. App'x 113, 117 (11th Cir. 2005).

Because Petitioner cannot demonstrate that he was prejudiced by his attorney's failure to explain the sentencing guidelines to him, the Court need not decide whether the attorney's performance in this regard was deficient. *See Grayson v. Thompson*, 257 F.3d 1194, 1225 (11th Cir. 2001) ("In this case, we need not decide whether counsel's performance was in fact deficient because Grayson so clearly fails to satisfy the prejudice prong of the Sixth Amendment analysis."), *cert. denied*, 536 U.S. 964 (2002). Therefore, Petitioner's claim as to this issue must be denied.

### E.   *Issue Four*

Petitioner also alleges that his attorney was ineffective because he did not allow Petitioner to testify in his own defense. At trial, defense counsel informed the Court that, after discussions with his attorney regarding "the pros and cons" of testifying, Petitioner had decided not to testify in his own defense (Criminal Case Doc. 161 at 166). When asked by the Court whether he understood that it was his decision not to testify, Petitioner responded that he understood (*Id.* at

166-67). When next asked by the Court if he had indeed decided not to testify, Petitioner responded in the affirmative (*Id*. at 167). These representations constitute "a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Petitioner has given the Court no explanation as to the means by which his attorney prevented him from testifying, nor has Petitioner specified exactly how his testimony would have rebutted the testimony of the witnesses against him. Petitioner's unsupported and conclusory allegations are insufficient to sustain this issue. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991), *cert. denied*, 502 U.S. 1105 (1992). Furthermore, Petitioner has failed to allege facts tending to show that the outcome of the trial would have been different had he testified. Thus, the prejudice element of *Strickland* has not been met, and this issue must be denied. *See Alvord v. Wainwright*, 725 F.2d 1282, 1289-90 (11th Cir.) (holding that when no prejudice shown, there is no need to address a claim that counsel was deficient), *cert. denied*, 469 U.S. 956 (1984).

### III.     *Claims Two, Three, and Five*

In claim two, Petitioner maintains that there was a structural error in his sentence because the district court "imposed a sentence over the jury verdict of no drug elemental amount found" (Doc. 13 at 5). Petitioner additionally argues, in claim three, that his Sixth Amendment right to jury trial was violated when the "the court found elements over the jury verdict" (*Id*. at 6). Finally, in claim five, Petitioner maintains that the sentence imposed was unreasonable in light of the lower sentences received by Petitioner's co-conspirators.

Petitioner raised all three of these claims in his direct appeal, and the Eleventh Circuit Court of Appeals rejected the arguments. This Court is not required, on § 2255 motions, to

reconsider claims of error that were raised and resolved on direct appeal. *U.S. v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000), *cert. denied*, 531 U.S. 1131 (2001); *U.S. v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981). "[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under section 2255." *U.S. v. Natelli*, 553 F.2d 5,7 (2d Cir.), *cert denied*, 434 U.S. 819 (1977); *see also U.S. v. Kraemer*, 810 F.2d 173, 177 (8th Cir. 1987) (appellant could not raise the same issues in a § 2255 motion that had been decided on direct appeal); *U.S. v. Khubani*, 791 F.2d 260, 263 (2d Cir.), *cert. denied*, 479 U.S. 851 (1986) (§ 2255 may not be employed to relitigate questions that were raised and considered on direct appeal).

Because claims two, three and five were considered on direct appeal, and Petitioner has failed to set forth any grounds that demonstrate the necessity for reconsideration, these claims cannot be relitigated on a § 2255 motion and must be denied.

### *IV.   Claim Four*

Petitioner next claims that the "Remedial Rule of **Booker**" is unconstitutional (Doc. 13 at 11). The Court notes that Petitioner could have raised this claim on direct appeal, as the United States Supreme Court's ruling in *U.S. v. Booker*, 543 U.S. 220 (2005), was rendered on January 12, 2005, one day prior to Petitioner's sentencing hearing. However, because Petitioner failed to raise this claim on direct appeal, the Court finds that it is now procedurally barred. "[A] defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. This rule generally applies to all claims, including constitutional claims." *Lynn v. U.S.*, 365 F.3d 1225, 1234 (11th Cir.) (citations omitted), *cert. denied*, 543 U.S. 891 (2004); *Mills v. U.S.*, 36 F.3d 1052,

1055 (11th Cir. 1994), *cert. denied*, 514 U.S. 1112 (1995).  However, a defendant can avoid the procedural bar by demonstrating the applicability of one of two exceptions: (a) cause and prejudice for the failure to raise the claim on direct appeal or (b) "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Mills*, 36 F.3d at 1055.

A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar; therefore, his failure to raise this claim on direct appeal constitutes a waiver and bars him from raising claim four now.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. The amended motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 filed by Juan Federico Bautista (Doc. 12) is **DENIED**.

2. This case is **DISMISSED** with prejudice.

3. The Clerk of Court shall enter judgment accordingly and is directed to close this case.  A certified copy of this Order and the judgment shall also be filed in criminal case number 6:03-cr-10-Orl-22DAB.

4. The Clerk of Court is directed to terminate the § 2255 motion (Criminal Case Doc. 171) filed in the criminal case number 6:03-cr-10-Orl-22DAB.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on March 3, 2008.

Copies furnished to:

Counsel of Record
Pro Se Party

ANNE C. CONWAY
United States District Judge